No. 12-2209

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

COMPANY DOE,

*Plaintiff-Appellee*,

v.

PUBLIC CITIZEN; CONSUMER FEDERATION OF AMERICA; CONSUMERS UNION,

*Parties-in-Interest-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MARYLAND AT GREENBELT

PAGE-PROOF RESPONSE BRIEF FOR APPELLEE
COMPANY DOE

Baruch A. Fellner
*Counsel of Record*
Thomas M. Johnson, Jr.
Amanda C. Machin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Attorneys for Appellee Company Doe*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to this Court's October 3, 2012 Order on Sealed Materials, Doc. No. 3-1, appellee Company Doe submitted a full corporate disclosure statement under seal, Doc. No. 8, accompanied by a certificate of confidentiality, Doc. No. 9. Because this material is currently under seal, it is not included in Company Doe's brief. However, a copy of the sealed corporate disclosure statement will be included in the sealed version of the joint appendix, currently due May 13, 2013. Doc. No. 65.

.

# TABLE OF CONTENTS

Page

REQUEST FOR ORAL ARGUMENT ................................................................. xiii

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ........................................................................3

STATEMENT OF THE ISSUES ............................................................................4

STATEMENT OF THE CASE ...............................................................................5

STATEMENT OF FACTS.....................................................................................6

    A.    The Statutory and Regulatory Scheme behind
           Saferproducts.gov ...............................................................6

    B.    The Materially Inaccurate Incident Report at Issue in the
           Underlying Litigation.......................................................10

    C.    The Consumer Groups' Limited Involvement in the Ancillary
           Sealing Issue and Non-Involvement on the Merits of
           Publication.......................................................................13

SUMMARY OF ARGUMENT ...........................................................................18

STANDARD OF REVIEW..................................................................................21

ARGUMENT ...................................................................................................22

I.    The Consumer Groups Lack Article III Standing. .......................................22

II.    The District Court Did Not Abuse Its Discretion by Limiting Public
      Access to the Judicial Proceedings to the Extent Necessary to
      Effectuate Its Judgment. ..................................................................25

    A.    The Common Law Creates No Broad Right of Access to the
           Sealed Documents. ...........................................................26

    B.    The First Amendment Creates No Broad Right of Access to the
           Sealed Documents. ...........................................................31

## TABLE OF CONTENTS
### (continued)

Page

C.   The Order Granting Company Doe Leave to Proceed under a Pseudonym Was an Appropriate Exercise of the District Court's Discretion. ...................................................................36

D.   The Sealing Order Was Narrowly Tailored. ........................................40

E.   Unsealing the Sealed Portions of the Record and Revealing Company Doe's Identity Would Inflict a Worse Injury Than Publication of the Materially Inaccurate Report on the Database. ...........................................................................43

III.   Regardless of the Merits of the Sealing Issue, Consumer Groups Cannot Pursue This Appeal in the CPSC's Absence. ...................................45

A.   The District Court Properly Exercised its Sound Discretion When It Determined That Intervention Was Not Appropriate. .........45

1.   No Active Case In Controversy Permits Consumer Groups' Intervention. ...............................................................45

2.   The District Court's Sealing Order Is Necessary to Effectuate the Underlying Judgment, Which the Consumer Groups Concede They Have No Right to Appeal. ....................................................................................47

3.   The Consumer Groups' Cases Are Inapposite Either Because the Sealing Issue Was Not Vigorously Litigated by the Parties or Was Incidental to the Underlying Judgment. ....................................................................................49

B.   The District Court Had Jurisdiction to Withdraw Its Conditional Grant of Post-Judgment Intervention. ...................................52

C.   Consumer Groups Also Fail to Satisfy the Strict Standard for Pursuing This Appeal As a Non-Party. ....................................53

CONCLUSION ....................................................................................55

**TABLE OF CONTENTS**
**(continued)**

<u>Page</u>

ADDENDUM OF RULES, STATUTES, AND REGULATIONS..........................59

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU v. Holder,*
   673 F.3d 245 (4th Cir. 2011).................................................................18

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997)..................................................................................24

*Ashcraft v. Conoco, Inc.,*
   218 F.3d 282 (4th Cir. 2000)..................................................................53

*Baltimore Sun Co. v. Goetz,*
   886 F.2d 60 (4th Cir. 1989)........................................................... 18, 19

*BE & K Constr. Co. v. NLRB,*
   536 U.S. 516 (2002)................................................................................27

*Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R,*
   331 U.S. 519 (1947)................................................................................22

*Black v. Cent. Motor Lines,*
   500 F.2d 407 (4th Cir. 1974)......................................................... 46, 49

*Bond v. Utreras,*
   585 F.3d 1061 (7th Cir. 2009).................................................................49

*Bhd. of R.R. Trainmen v. Virginia ex. rel. Va. State Bar,*
   377 U.S. 1 (1964)....................................................................................27

*Brown & Williamson Tobacco Corp. v. FTC,*
   710 F.2d 1165 (6th Cir. 1983), *cert. denied,* 465 U.S. 1100 (1984)....................29

*Buckner v. Schaefer,*
   No. 93-6547, 1993 U.S. App. LEXIS 33454 (4th Cir. Dec. 22, 1993)....................................................................................54

*Charlotte-Mecklenburg Hosp. Auth. v. Perry,*
   571 F.2d 1952 (4th Cir. 1978)................................................................29

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Diamond v. Charles*,
  476 U.S. 54 (1986) ........................................................................48

*Doe v. Alaska Dep't of Pub. Safety*,
  No. 96-35873, 1997 WL 547941 (9th Cir. Sept. 2, 1997) ...................37

*Doe v. Frank*,
  951 F.2d 320 (11th Cir. 1992)........................................................37

*EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ......................................................49

*F.T.C. v. AbbVie Prods. LLC*,
  No. 12-16488, 2013 WL 1149311 (11th Cir. Mar. 21, 2013)...............43

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir. 1989).........................................................47

*Hamlin v. Warren*,
  664 F.2d 29 (4th Cir. 1981)..........................................................31

*Hill v. W. Elec. Co.*,
  672 F.2d 381 (4th Cir. 1982).........................................................21

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999)........................................................28

*Houston Gen. Ins. Co. v. Moore*,
  193 F.3d 838 (4th Cir. 1999).........................................................46

*Hunton & Williams v. U.S. Dep't of Justice*,
  590 F.3d 272 (4th Cir. 2010).........................................................28

*In re Associated Press*,
  162 F.3d 503 (7th Cir. 1998).........................................................50

*In re Knight Pub. Co.*,
  743 F.2d 231 (4th Cir. 1984).........................................................55

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*In re Sierra Club*,
945 F.2d 776 (4th Cir. 1991)................................................................46

*In re State-Record Co.*,
917 F.2d 124 (4th Cir. 1990)................................................................21

*In re Wash. Post Co.*,
807 F.2d 383 (4th. Cir. 1986)................................................ 21, 34, 41

*James v. Jacobson*,
6 F.3d 233 (4th Cir. 1993)................................................... 21, 38, 40

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989) ............................................................................39

*John Doe Corp. v. Miller*,
499 F. Supp. 378 (E.D.N.Y. 1980)......................................................39

*John Doe Corp. v. United States*,
714 F.2d 604 (6th Cir. 1983)...............................................................39

*John Doe v. A Corp.*,
709 F.2d 1043 (5th Cir. 1983).............................................................39

*Kenny v. Quigg*,
820 F.2d 665 (4th Cir. 1987)................................................. 4, 20, 53

*Lane v. Holder*,
703 F.3d 668 (4th Cir. 2012)...............................................................22

*Level 3 Comm'cns, LLC v. Limelight Networks, Inc.*,
611 F. Supp. 2d 572 (E.D. Va. 2009)..................................................34

*Littlejohn v. Bic Corp.*,
851 F.2d 673 (3d Cir. 1988).................................................................46

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................22

vii

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Lytle v. Griffith*,
240 F.3d 404 (4th Cir. 2001)................................................................52

*M.S. v. Wermers*,
557 F.2d 170 (8th Cir. 1977)...............................................................20

*McClelland v. Johnson*,
111 F. App'x 697 (4th Cir. 2004) .......................................................22

*McHenry v. Comm'r*,
677 F.3d 214 (4th Cir. 2012)...............................................................45

*Munzer v. Blaisdell*,
48 N.Y.S.2d 355 (1944) .......................................................................28

*NAACP v. Button*,
371 U.S. 415 (1963) .............................................................................27

*Nixon v. Warner Comm'cns*,
435 U.S. 589 (1978) ........................................................................ 2, 21

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994)............................................................ 46, 50

*Press-Enterprise Co. v. Superior Court*,
478 U.S. 18 (1986) ......................................................................... 19, 33

*Pub. Citizen v. Liggett Grp., Inc.*,
858 F.2d 775 (1st Cir. 1988) ...............................................................49

*Publicker Indus., Inc. v. Cohen*,
733 F.2d 1059 (3d Cir. 1984)..............................................................34

*Roe v. Ingraham*,
364 F. Supp. 536 (S.D.N.Y. 1973)......................................................37

*Rosenfeld v. Montgomery Cnty. Pub. Schs*,
25 F. App'x 123 (4th Cir. 2001) .........................................................23

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Rushford v. New Yorker Magazine, Inc.*,
    846 F.2d 249 (4th Cir. 1988)........................................................ 23, 36, 40, 51

*Schmedding v. May*,
    48 N.W. 201 (1891)............................................................................28

*Smith v. Pennington*,
    352 F.3d 884 (4th. Cir. 2003)....................................................... 21, 45

*Stone v. Univ. of Md. Med. Sys. Corp.*,
    855 F.2d 178 (4th Cir. 1988)....................................................... 23, 26, 33, 55

*Stuart v. Huff*,
    706 F.3d 345 (4th Cir. 2013)....................................................... 47, 51

*Under Seal v. Under Seal*,
    No. 94-1171, 1994 WL 283977 (4th Cir. June 27, 1994)........................... 29, 36

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977) ...........................................................................46

*United Mine Workers of Am. v. Ill. State Bar Ass'n*,
    389 U.S. 217 (1967) ...........................................................................27

*United States v. Appelbaum*,
    707 F.3d 283 (4th Cir. 2013)........................................................ *passim*

*United States v. Blue Chip Stamp Co.*,
    272 F. Supp. 432 (C.D. Cal. 1967)..................................................47

*United States v. Moussaoui*,
    65 F. App'x 881 (4th Cir. 2003) .....................................................50

*Va. Dep't of State Police v. Wash. Post*,
    386 F.3d 567 (4th Cir. 2004).........................................................33

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................22

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Woven Elecs. Corp. v. Advance Grp., Inc.*,
  1991 WL 54118 (4th Cir. Apr. 15, 1991) ...........................................35

*Wright v. Sumter Cnty. Sch. Dist. #17*,
  No. 94-2534, 1995 U.S. App. LEXIS 4134 (4th Cir. Mar. 2, 1995) ..................54

*X Corp. v. Doe*,
  805 F. Supp. 1298 (E.D. Va. 1992)....................................................29

**Statutes**

15 U.S.C. § 2055a .......................................................... *passim*

28 U.S.C. § 1291 ...........................................................................3

28 U.S.C. § 1331 ...........................................................................3

**Rules**

D. Md. Loc. R. 105(11).................................................................14

Fed. R. Civ. P. 24(b) ...................................................................46

Loc. R. 32.1 ................................................................ 35, 36, 54

**Regulations**

16 C.F.R. § 1102.26 .................................................................. 8, 13

21 C.F.R. § 803.1 ........................................................................9

Publicly Available Consumer Product Safety Information Database, 75
  Fed. Reg. 76832....................................................................8

**Treatises**

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and
  Procedure* § 1913 (3d ed. 1998) .........................................45

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**Other Authorities**

153 Cong. Rec. H16874, H16886 (Dec. 19, 2007) (statement of Rep.
    Markey) .........................................................................................6

154 Cong. Rec. H3854, H3854 (daily ed., May 14, 2008) (statement
    of Rep. Dingell)............................................................................7

154 Cong. Rec. S1556, S1564 (daily ed., Mar. 5, 2008) (statement of
    Sen. Pryor)...................................................................................7

154 Cong. Rec. S7867, S7871 (daily ed., July 31, 2008) (statement of
    Sen. Jon Kyl) ...............................................................................7

CMS, *Data Sources*,
    http://www.medicare.gov/NursingHomeCompare/Data/Sources/Dat
    a-Sources.aspx (last visited Apr. 10, 2013) ........................................10

Consumer Financial Protection Bureau, *Consumer Complaints*,
    http://www.consumerfinance.gov/complaintdatabase/ (last visited
    Apr. 22, 2013) ..............................................................................10

Consumer Product Safety Commission, *Public Export Database Tool*,
    http://www.saferproducts.gov/SPDB.zip ............................................8

Crowell & Moring, *Federal Court Holds that CPSC's Decision to
    Publish Report of Harm on Public Database Violates the APA* (Oct.
    24, 2012)......................................................................................42

*Cyber-Libeling the Glitterati: Protecting the First Amendment for
    Internet Speech*, 9 Vand. J. Ent. & Tech. L. 897, 911-12 (2007) .......................30

*Disclosure of Certain Credit Card Complaint Data*,
    76 Fed. R. 76628, 76631 (Dec. 8, 2011).............................................10

Government Accountability Office, *Consumer Product Safety
    Commission: Awareness, Use, and Usefulness of Saferproducts.gov*,
    11 (Mar. 11, 2013)..........................................................................44

xi

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

Greg Ryan, *Court's Rebuke of CPSC Lends Weight to Database Gripes*, Law360.com (Oct. 25, 2012) ....................................................42

Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. Kan. L. Rev. 195, 256 (2005) ..........................................................................31

NHTSA Complaints Database, http://www-odi.nhtsa.dot.gov/complaints/ ..............................................................9

Note, *All Courts Shall Be Open: The Public's Right to View Judicial Proceedings and Records*, 52 Temp. L.Q. 311, 335 (1979).......................... 28, 31

## REQUEST FOR ORAL ARGUMENT

Appellee Company Doe respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(a).  This case presents important legal issues concerning the power of district courts to control their own dockets and enter sealing orders necessary to effectuate their judgments. Appellants, whose request to intervene was denied in the district court, improperly seek to overturn the decision denying intervention and to challenge a sealing order that the district court correctly determined was necessary to ensure that Company Doe's statutory rights were vindicated.  Company Doe respectfully submits that oral argument would allow the Court to ask any questions it may have about the issues presented by this appeal.

## INTRODUCTION

This appeal involves an attempt by three interest groups who did not participate as either parties or intervenors in the court below to deprive Appellee Company Doe of its statutory remedies under the Administrative Procedure Act ("APA") and Consumer Product Safety Improvement Act ("CPSIA"). The CPSIA mandates that the Consumer Product Safety Commission ("CPSC") decline to publish a "materially inaccurate" incident report on its online database, saferproducts.gov. 15 U.S.C. § 2055a(c)(4). Company Doe has established that the incident report at issue in this case was "materially inaccurate" and cannot be published. The district court agreed with Company Doe and awarded it summary judgment on its APA claims, enjoining the report's publication either on the database or otherwise; and the CPSC has abandoned its appeal of that decision. *See* Dkt. 11-cv-2958, Doc. No. 74, at 53. The sole question before this Court is whether outside groups may intervene post-judgment, after the underlying case has already been closed, to challenge the sealing order entered by the district court and thus publicly disclose the very same incident report that Company Doe successfully sued to exclude and, furthermore, identify the manufacturer of an innocent product.

The answer to this question is plainly no. The request to unseal the particular documents protected in this case is not supported by common sense, logic, or case law. Moreover, the district court correctly denied these third parties

1

leave to intervene permissively—in the face of the Government abandoning its appeal—because their motion to unseal amounted to a collateral attack on the merits of the underlying judgment, which the putative intervenors concede they do not (and could not) challenge.

The putative intervenors claim both a First Amendment and a common-law interest in the sealed documents. But such claims cannot succeed where, as here, the information sought could "serve as reservoirs of libelous statements" about Company Doe, or "as sources of business information that might harm [its] competitive standing." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). Congress decided that the public has no interest in disclosure of an inaccurate report. To the contrary, the public interest in the integrity and accuracy of the CPSC's database is only *enhanced* by the district court's sealing order. No company would hazard the costs and uncertainty of litigation to challenge an inaccurate incident report if a third party could appear, unseal any document revealing the identity of the product's manufacturer or the content of the report, and render a carefully considered 73-page decision no more than a Pyrrhic victory.

Companies faced with this possibility might instead hazard that it is better to permit publication of libelous reports and hope that they are buried among the thousands of other submissions on the database; litigation would only spotlight the false incident report. But that is precisely the opposite of what Congress intended

when it provided companies with a right to identify and rectify any material errors on the database. The putative intervenors should not be permitted to use the First Amendment to deprive the courts of their historic "supervisory power over [their] own records and files." *Id.* at 598. Rather, the sealing order should be upheld, or in the alternative, this Court need not reach the nettlesome sealing issues and may simply affirm the district court's exercise of discretion in denying the interloping parties any right to intervene permissively.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Company Doe's APA and constitutional claims under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291, as this appeal arises from a final judgment entered on July 31, 2012. Dkt. 11-cv-2958, Doc. No. 74. Although they were neither parties nor proper intervenors in the district court, Public Citizen, Consumer Federation of America, and Consumers Union (collectively, "Consumer Groups") noticed an appeal of the final judgment within sixty days after the judgment was entered, on September 28, 2012, as did the CPSC. Dkt. 12-2209, Doc. No. 15, at 1; Dkt. 12-2210, Doc. No. 19, at 1. The CPSC moved to dismiss its appeal on December 7, 2012, and that motion was immediately granted. Dkt. 12-2210, Docs. No. 26 & 28. Following CPSC's dismissal from the case, the district court denied a motion previously filed by the Consumer Groups to intervene to challenge the district court's order sealing certain documents. As discussed *infra* at pp. 45-51, that

3

decision was correct and the Consumer Groups have no legal authority to pursue this appeal in the CPSC's absence.

## STATEMENT OF THE ISSUES

1.    Whether the Consumer Groups have standing to pursue this appeal despite the fact that they have no particularized interest in an unpublishable incident report;

2.    Whether the district court abused its discretion in sealing documents and permitting Company Doe to proceed under a pseudonym because "the revelation of [Company Doe]'s identity would yield the very injury that is the cynosure of the underlying litigation," Dkt. 11-cv-2958, Doc. No. 74, at 73;

3.    Whether the district court abused its discretion in denying the Consumer Groups permission to intervene after final judgment had been entered, since "the merits of the [APA] dispute and the issues related to sealing are inextricably intertwined," and the substantive APA dispute was only "between [Company Doe] and the Commission," *id.*, Doc. No. 86, at 2.

4.    Whether Consumer Groups may pursue this appeal in the CPSC's absence, in light of the fact that they are not proper intervenors and, as a non-party, did not "participate[] *significantly* in the proceedings below" or have "a *substantial* interest in the outcome of th[e] proceedings" below.  *Kenny v. Quigg*, 820 F.2d 665, 668 (4th Cir. 1987) (emphases added).

## STATEMENT OF THE CASE

On October 17, 2011, Company Doe filed a complaint against the CPSC and its chairman, alleging that the CPSC violated the APA and the Constitution by deciding to publish a materially inaccurate incident report, and seeking injunctive relief to prevent any future publication or dissemination of the report.  Dkt. 11-cv-2958, Doc. No. 1.  Company Doe simultaneously filed a motion to seal the case and proceed under a pseudonym to ensure that it could pursue judicial relief without inflicting on itself the very injury it sought to avoid by filing suit.  *Id.*, Doc. No. 2; *id.*, Doc. No. 2-1, at 1-2.

Thereafter, Company Doe and the CPSC briefed the motion to seal, a motion for preliminary injunctive relief, a motion to dismiss, a motion to stay proceedings, and cross-motions for summary judgment.  *Id.*, Doc. No. 74, at 3-12.  The report was not published on saferproducts.gov during the pendency of the lawsuit.  Consumer Groups filed objections to the motion to seal but did not otherwise participate in the proceedings before the district court prior to the entry of final judgment.  *Id.* at 9.

On July 31, 2012, the district court entered a final judgment, denying the CPSC's motion for summary judgment and granting Company Doe's cross-motion for summary judgment.  The district court also granted Company Doe's motion to proceed under a pseudonym and partially granted Company Doe's motion to seal the case.  *Id.* at 73.  As described more fully on pp. 45-52 *infra*, Consumer Groups

moved to intervene permissively after final judgment was entered, for the limited purpose of challenging the court's sealing order. *Id.*, Doc. No. 52, at 2. After CPSC moved to dismiss its appeal of the underlying judgment, the district court denied the Consumer Groups' motion to intervene. *Id.*, Doc. No. 86, at 3.

## STATEMENT OF FACTS

### A.    The Statutory and Regulatory Scheme behind Saferproducts.gov

The CPSC is tasked with, among other things, the maintenance of the saferproducts.gov database and the review of reports submitted to the database.

In 2008, Congress passed the CPSIA, Pub. L. No. 110-314, which mandated that the CPSC create a publicly available, searchable Internet database for consumer reports. The database was meant to be a "user-friendly database on deaths and serious injuries *caused* by consumer products." 154 Cong. Rec. S7867, S7870 (daily ed., July 31, 2008) (statement of Sen. Levin) (emphasis added).

In creating the database and imposing these requirements, Congress recognized that "information that does not identify which specific products are causing problems . . . is . . . of no real use to consumers." 153 Cong. Rec. H16874, H16886 (daily ed., Dec. 19, 2007) (statement of Rep. Markey). Many expressed persistent concerns that "[i]naccurate information about a company's product on a government-endorsed website could irrevocably harm a company's reputation." 154 Cong. Rec. S7867, S7871 (daily ed., July 31, 2008) (statement of Sen. Jon

6

Kyl).  After a great deal of controversy, the legislation created "safeguards" that took businesses' interests into account and required "filtering" of information intended to "make sure erroneous information is not disseminated."  154 Cong. Rec. S1556, S1564 (daily ed., Mar. 5, 2008) (statement of Sen. Pryor).

To ensure that the CPSC would not publish information that is inaccurate, unhelpful for consumers, or detrimental to businesses, the statute required that reports meet certain minimum requirements and provided manufacturers with the right to receive timely notice of a report prior to publication, as well as the right to file materially inaccurate or confidential information claims before the report is published.  15 U.S.C. § 2055a.  Indeed, Congress recognized that the CPSIA was intended to "provide public access to a database of serious injuries and deaths caused by consumer products, but it does so requiring also that the information be truthful, correct, and properly verified."  154 Cong. Rec. H3854, H3854 (daily ed., May 14, 2008) (statement of Rep. Dingell).

One minimum requirement is that the harm or risk of harm described in the report must "relat[e] to the use of the consumer product"; if a report fails to satisfy this requirement, it cannot be published.  15 U.S.C. § 2055a(b)(1).  If a manufacturer establishes that a report that meets minimum requirements nonetheless contains materially inaccurate information, the CPSC can either

correct the inaccuracy or, if it cannot be corrected, "decline to add the materially inaccurate information" to saferproducts.gov. *Id.* § 2055a(c)(4).

On December 9, 2010, the CPSC promulgated final rules governing the database. *See* Publicly Available Consumer Product Safety Information Database, 75 Fed. Reg. 76,832 (Dec. 9, 2010) (codified at 16 C.F.R. 1102 *et seq.*). These regulations implement the statutory mandate that the CPSC prevent the publication of materially inaccurate information on the website by defining "materially inaccurate information" as "information that is false or misleading, and which is so substantial and important as to affect a reasonable consumer's decision making about the product." *See* 16 C.F.R. § 1102.26.

The Consumer Product Safety Information Database went live on March 11, 2011, at http://saferproducts.gov. Dkt. 11-cv-2958, Doc. No. 74, at 3. Since that time, over 14,000 reports have been published on the website. *See* Consumer Product Safety Commission, *Public Export Database Tool*, http://www.saferproducts.gov/SPDB.zip (last visited Apr. 22, 2013) (file labeled "Incident Reports"). Only one report that the CPSC sought to publish on saferproducts.gov has been challenged in court.

The procedural protections mandated by Congress and the CPSC distinguish this statutory scheme from the other government databases that currently exist. As Consumer Groups note, the National Highway Traffic Safety Administration

8

("NHTSA") and the Food and Drug Administration ("FDA") oversee databases of safety incidents. Consumer Groups' Brief ("CG Br."), at 25. But rather than permit almost anyone to submit a report and then rely on a robust administrative process to manage the content of the database, as Congress provided for saferproducts.gov, those databases instead rely on stricter limits on who may input what data into the database, as well as how that data may be viewed. The searchable FDA adverse event database does not contain consumer reports but mandatory reports from "device user facilities, manufacturers, importers, and distributors." *See* 21 C.F.R. § 803.1. The FDA also collects adverse event reports on a voluntary basis directly from consumers, but that information is primarily made available in raw data sets. *See* FDA, *FDA Adverse Event Reporting System* ("FAERS"), http://www.fda.gov/Drugs/GuidanceComplianceRegulatory Information/Surveillance/AdverseDrugEffects/ default.htm (last visited Apr. 22, 2013). The NHTSA database requires that individuals know the make and model of vehicles, tires, and car seats reported; individuals must also input this specific information when searching for complaints. *See* NHTSA, *Safercar.gov*, http://www-odi.nhtsa.dot.gov/complaints/. Requiring such detailed information helps to ensure the database's reliability. Moreover, it is Company Doe's understanding that *none* of these other databases contain an administrative mechanism for affected parties to challenge the accuracy of the information

9

submitted to the government using a quasi-adversarial process.[1]

## B. The Materially Inaccurate Incident Report at Issue in the Underlying Litigation

The underlying dispute began when an "unidentified local government agency" submitted an incident report attributing a harmful incident to Company Doe's product. Dkt. 11-cv-2958, Doc. No. 74, at 3. The report sought "to associate a harm suffered by a minor with the use of a product manufactured and sold by [Company Doe] without any factual, scientific, medical or legal support." *Id.*; Doc. No. 2-1, at 1. Upon transmittal of the incident report to Company Doe pursuant to 15 U.S.C. § 2055a, Company Doe exercised its statutory right to submit a materially inaccurate information claim. *Id.*, Doc. No. 74, at 3. Company Doe later "submitted medical evidence" and an expert report to the CPSC in order "to buttress its contention that the report was materially inaccurate." *Id.* at 4.

---

[1] Similarly, the Consumer Financial Protection Bureau ("CFPB") and Centers for Medicare and Medicaid Services ("CMS") operate databases (to which *amici curiae* refer, *see* Dkt. 12-2209, Doc. No. 42-1, at 17-24) that are more limited. For example, only credit card holders or their authorized representatives may submit complaints to the CFPB credit cards complaint database, *Disclosure of Certain Credit Card Complaint Data*, 76 Fed. R. 76628, 76631 (Dec. 8, 2011), and the CFPB "take[s] steps to confirm a commercial relationship between the consumer and company" before publishing complaints of any type. CFPB, *Consumer Complaints*, http://www.consumerfinance.gov/complaintdatabase/ (last visited Apr. 22, 2013). The CMS Nursing Home Compare database relies on data sets "reported by the nursing homes themselves" and reviewed by "[n]ursing home inspectors." CMS, *Data Sources*, http://www.medicare.gov/ NursingHomeCompare/Data/Sources/Data-Sources.aspx (last visited Apr. 22, 2013).

Members of the CPSC's staff reviewed the report and "attempt[ed] to associate the risk of harm" to the use of the product. *Id.* at 5. The CPSC determined that Company Doe was correct—the "information in the incident report that [Company Doe] identified as materially inaccurate met the definition of materially inaccurate information in 16 C.F.R. § 1101.26 (2011)." *Id.* at 6. However, the CPSC attempted to salvage the report by proposing a new version. *Id.* Company Doe submitted a second materially inaccurate information claim, arguing that the CPSC had "compounded the [original] report's inaccuracy." *Id.* at 6. Once again, the CPSC agreed, and it again attempted to fashion something publishable from the remains of the report. *Id.* at 7. When the CPSC insisted on publishing some version of the incident report, Company Doe filed the underlying suit. *Id.*

During the pendency of litigation, the CPSC forwarded Company Doe the epidemiologic investigation report prepared during its parallel investigation, about which Company Doe knew nothing. *Id.*, Doc. No. 74, at 11. This epidemiologic investigation report conclusively established that Company Doe's product did not cause the harm described in the incident report. *Id.* at 45. In light of this evidence, Company Doe filed another materially inaccurate information claim. *Id.* at 11-13. It was later revealed that the CPSC's own expert agreed that the new evidence established that, instead of Company Doe's product, another "injury mechanism"

11

was responsible for the incident. *Id.* at 13. Nonetheless, the CPSC persisted in its view that the report should be published, notwithstanding the conclusive and consistent findings that the incident had nothing to do with Company Doe's product. After the CPSC declined once again to rectify the errors Company Doe identified in the report, Company Doe filed an amended complaint based on the new facts in the epidemiologic investigation report. *Id.* at 14-15.

District Court Judge Williams enjoined the publication of the incident report for two reasons.

First, the incident report did not describe a harm or risk of harm "relating to the use of a consumer product." 15 U.S.C. § 2055a(c)(4). "Although the 'related to' standard requires a showing of connection in lieu of causation, neither the enabling statute nor the implementing regulations suggests that rank speculation of [the] sort [the CPSC engaged in] suffices to show such an association." Dkt. 11-cv-2958, Doc. No. 74, at 42. Indeed, the CPSC's attempt to publish this speculative report was "inconsisten[t]" with its past precedents; a Government Accountability Office report had stated that the CPSC had declined to publish several reports of harm because it was clear the product was not the "source of the problem." *Id.* at 45. The district court found that this same precedent should have excluded the challenged report from publication. *Id.*

Second, the court concluded that the incident report was materially

12

inaccurate. The CPSC's "definition of materially inaccurate information has two prongs: (1) misleading information that is (2) so substantial and important as to affect a reasonable consumer's decision making about the product." Dkt. 11-cv-2958, Doc. No. 74, at 47 (citing 16 C.F.R. § 1102.26(a)(1) (2011)). In this case, the first prong was met; that is, the "incident report is misleading because it creates a false impression that [the product] played a role in [the incident]." *Id.* The second prong was met because "common sense says that" the report would "dissuade[] [consumers] from purchasing it," particularly since the report would "bear[] the Government's stamp of approval. . . ." *Id.*

After reviewing the evidence submitted, the district court concluded that this materially inaccurate report was "injurious to [Company Doe]'s reputation, and risk[ed] harm to [Company Doe]'s economic interests." Dkt. 11-cv-2958, Doc. No. 74, at 68. These damages would be particularly severe in light of the product's "solid track record of safety," which was undisputed by the CPSC. *Id.* at 69.

### C.    The Consumer Groups' Limited Involvement in the Ancillary Sealing Issue and Non-Involvement on the Merits of Publication

To ensure the efficacy of any injunctive relief, Company Doe filed a motion to seal the case and proceed under a pseudonym. Dkt. 11-cv-2958, Doc. No. 2; *id.*, Doc. No. 2-1, at 1-2. The district court agreed with Company Doe that sealing was necessary to effectuate the final judgment enjoining publication or dissemination of the report. However, the district court declined to seal the case entirely and

13

instead ordered Company Doe to propose redactions and identify any documents to which redactions could not be made "without compromising [Company Doe]'s vindicated interests." *Id.*, Doc. No. 74, at 70. In so ordering, the district court recognized that Company Doe was "[p]resumably . . . in the best position to determine what level of redaction, if any, will suffice to balance the competing interests" of public access and Company Doe's "First Amendment" right to petition "the Court for redress of its grievances." *Id.* at 70.

Pursuant to the procedure prescribed by the district court, *see* Dkt. 11-cv-2958, Doc. No. 51, Company Doe proposed redactions to various documents and identified the documents which could not be sufficiently redacted to protect the underlying incident report and Company Doe's identity from being easily deduced. *Id.*, Doc. No. 74, at 70-71; *id.*, Doc. No. 67, at 2, 6; *id.*, Doc. No. 68. The CPSC then responded with comments on the proposed redactions. *Id.*, Doc. No. 67, at 2. The district court "carefully reviewed the[] [proposed] redactions and . . . determined that they adequately apprise the public of all essential, nonconfidential information regarding the case." *Id.*, Doc. No. 67, at 5.

The district court's local rules provide that the court shall not "rule upon the motion [to seal] until at least fourteen (14) days after it is entered on the public docket to permit the filing of objections by interested parties." D. Md. Loc. R. 105(11). Pursuant to this local rule, the Consumer Groups filed objections to the

motion to seal.  Dkt. 11-cv-2958, Doc. No. 74, at 9.  Their objections "duplicate[d]" arguments that the Commission ma[de] in its Opposition to Plaintiff's Motion to Seal." *Id.* at 9-10.  Apart from filing objections to the motion to seal and moving to unseal documents related to the motion to seal, *id.*, Docs. No. 14 & 22, Consumer Groups were not involved in the redactions process or in any other stage of the district court's proceedings prior to final judgment.

After the case was closed, however, Consumer Groups filed a motion seeking "permissive intervention" pursuant to Fed. R. Civ. P. 24(b) "for the limited purpose of challenging the partial sealing of this case (including the use of a pseudonym . . .)."  Dkt. 11-cv-2958, Doc. No. 52, at 2.  Consumer Groups did not claim any right to defend the CPSC's decision to publish the report or even to participate in the redactions process.  Company Doe filed a response to this motion indicating that it did not oppose the post-judgment motion to intervene as long as "a continuing case [in] controversy" in which intervention would be appropriate remained.  *Id.*, Doc. No. 86, at 1.  Were the Government to decide, as it eventually did, not to pursue an appeal, Company Doe reserved the right to revisit the intervention issue.  *Id.*, Doc. No. 73, at 1.

During the pendency of its intervention motion before the district court, Consumer Groups noticed this appeal, challenging the district court's decision on sealing and including "intervention" among the issues appealed.  Dkt. 12-2209,

15

Doc. No. 15 (Oct. 12, 2012).[2]

The district court, on October 9, 2012, granted the motion to intervene—conditioned on Company Doe's consent.  *See* Dkt. 11-cv-2958, Doc. No. 67, at 7 & Doc. No. 68.  As the court clarified in a later order, its October 9 order was "clearly procedural" and "based on Plaintiff's conditional lack of opposition."  *See id.*, Doc. No. 73, at 2.  "[F]or good cause shown," Company Doe could "move the Court for reconsideration of its decision granting" the motion to intervene.  *Id.*

On December 7, 2012, the Government moved this Court to dismiss its appeal of the district court's judgment—including its challenge to sealing—which this Court immediately granted.  *See*, Dkt. 12-2210, Doc. Nos. 26 & 28.  Company Doe then moved the district court to reconsider its order provisionally granting the Consumer Groups leave to intervene.

On January 14, 2013, the district court granted Company Doe's motion for reconsideration and vacated its prior order conditionally granting the motion to intervene because "permissive intervention in this case is not substantively proper."  Dkt. 11-cv-2958, Doc. No. 86, at 2.  As an initial matter, the court confirmed that its previous order on the intervention issue had "conditionally grant[ed] the Consumer Groups' Motion to Intervene," *id.* at 2-3, since Plaintiff's

---

[2]  Consumer Groups noticed intervention as an issue on appeal even though it had nothing to appeal from when it filed the original notice of appeal.

16

non-opposition to the motion to seal was "conditioned . . . on the existence of a continuing case or controversy." *Id.* at 1.

The court then held that the "Consumer Groups' objection to sealing was an ancillary issue that effectively became moot when the court, after extensive analysis, determined that the Commission's action violated the APA." Dkt. 11-cv-2958, Doc. No. 86, at 2. Previously, the court had determined that "forcing Plaintiff to reveal its identity and/or the underlying facts of the case to the Consumer Groups (or anyone else) would undermine the very rights and interests that Plaintiff filed suit to protect and that were ultimately vindicated." *Id.* "In short," the court concluded, "the merits of the dispute and the issues related to sealing are inextricably intertwined," and thus, Consumer Groups' intervention was inappropriate. *Id.*[3]

In light of the district court's decision, Company Doe promptly filed a motion to dismiss this appeal under Loc. R. 27(f), on the basis that the Consumer Groups are not proper parties to the appeal. Dkt. 12-2209, Doc. 59, at 7. This Court deferred action on the motion to dismiss, "so that the issues pertaining thereto may be considered simultaneously with the merits" of the sealing issues.

---

[3] The court also concluded that it had jurisdiction to grant Company Doe's motion because its order "acts to aid the Fourth Circuit's resolution of the appeal by making it clear that, in the exercise of its sound discretion, the Court does not believe that this is an appropriate case for permissive intervention." Dkt. 11-cv-2958, Doc. No. 86, at 2-3.

*Id.*, Doc. No. 64, at 2.

## SUMMARY OF ARGUMENT

At stake in this case is the First Amendment right to petition the courts for relief, and the district court's "inherent power to control access" to judicial records in order to effectuate appropriate relief. *United States v. Appelbaum*, 707 F.3d 283, 289 (4th Cir. 2013); *see also Wash. Post Co. v. Hughes*, 923 F.2d 324, 326 n.2 (4th Cir. 1991); *ACLU v. Holder*, 673 F.3d 245, 256 (4th Cir. 2011). A court's traditional power to limit access to judicial opinions, complaints, docket sheets, or other documents through sealing or protective orders is a common vehicle that courts find "reasonably useful to achieve justice." *Holder*, 673 F.3d at 256 (internal quotation marks omitted). Ordinarily, such decisions, which derive from the common law, are "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (internal quotation marks omitted).

Consumer Groups nevertheless seek to unseal the entire record in this case by invoking the First Amendment right of access—a more stringent standard that applies only when the "place and process" at issue "have historically been open to the press and general public," and where "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co.*

*v. Superior Court*, 478 U.S. 1, 8 (1986); *Appelbaum*, 707 F.3d at 291; *Goetz*, 886 F.2d at 64 (internal quotation marks omitted). This test cannot possibly be met on the unique facts of this case. The saferproducts.gov database is not yet two years old and was created by 2008 legislation, and this is the first judicial action in which an inaccurate incident report placed on that database has been challenged. Clearly, no "historic[]" public right attaches to the content of materially inaccurate incident reports placed on saferproducts.gov—which is what the district court ordered be sealed in this case. Moreover, public access does not play a "significant role" in the functioning of the particular process at issue; to the contrary, the reliability of the CPSC's database depends on maintaining the carefully crafted rights of manufacturers to ensure that false and misleading reports will not be made public in any administrative or judicial proceeding.

Without the benefit of the First Amendment, Consumer Groups cannot show, under the common-law standard, that the district court abused its discretion by concluding that the interests "in support of sealing . . . outweigh[] the public's interest in openness." *Appelbaum*, 707 F.3d at 293. The district court correctly and reasonably concluded that sealing was necessary to effectuate the judgment that Company Doe obtained under the CPSIA and the APA—non-publication of a report that unfairly maligned one of its products. This case is therefore not unlike countless others in which a court has determined that a protective order or *in*

19

*camera* review is necessary to effect relief on a party's claims—such as in trade-secret cases, libel cases, or Freedom of Information Act ("FOIA") cases, to name a few. *See infra* at 27-29. And, for the same reasons, the court's decision to permit Company Doe to proceed pseudonymously was likewise reasonable, because "to require [it] to disclose [its] participation . . . at this stage would substantially nullify the [substantive] right [it] seeks to vindicate." *M.S. v. Wermers*, 557 F.2d 170, 176 (8th Cir. 1977).

In any event, while the merits of the sealing issue are clear, Consumer Groups should not be permitted to pursue this appeal in the first instance. Consumer Groups lack standing to pursue this appeal because they will not suffer a particularized injury if the sealing order is maintained. Furthermore, after the CPSC withdrew its appeal of the underlying judgment, the district court properly determined that no case in controversy remained, and denied Consumer Groups the right to intervene permissively. "[T]he general rule [is] that persons who are neither original parties to, nor intervenors in, district court proceedings . . . may not appeal a judgment of the district court." *Kenny*, 820 F.2d at 667. Consumer Groups provide no reason to deviate from that established rule here, particularly because the sealing order is inextricably intertwined with the merits of this case, which Consumer Groups concededly have no standing to appeal.

20

## STANDARD OF REVIEW

This Court reviews a district court's decision to permit a party's use of a pseudonym under "the familiar abuse of discretion standard," and overturns such a decision only if the district court has "fail[ed] or refus[ed] . . . to exercise discretion," failed to consider "judicially recognized factors constraining its exercise," or based its decision on "erroneous factual or legal premises." *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993). Similarly, "[u]nder the common law, a trial court's denial of access to documents is reviewed only for abuse of discretion," *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th. Cir. 1986), because "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. If the court determines that certain records are subject to the more stringent First Amendment standard, review of a trial court order sealing those records is *de novo*. *In re State-Record Co.*, 917 F.2d 124, 127 (4th Cir. 1990).

The abuse of discretion standard also applies to this Court's review of the district court's denial of intervention. As the Consumer Groups concede, CG Br. at 16-17, decisions regarding permissive intervention are committed to the "'sound discretion'" of the district court. *Smith v. Pennington*, 352 F.3d 884, 892 (4th. Cir. 2003) (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)). Indeed,

"'in the absence of an abuse of discretion,'" typically "'no appeal lies from an order denying leave to intervene where intervention is a permissive matter within the discretion of the court.'"  *McClelland v. Johnson*, 111 F. App'x 697, 697 (4th Cir. 2004) (per curiam) (quoting *Bhd. of R.R. Trainmen v. B&O R.R. Co.*, 331 U.S. 519, 524 (1947)).[4]

## ARGUMENT

### I.    The Consumer Groups Lack Article III Standing.

As an initial matter, the Consumer Groups cannot demonstrate the "irreducible constitutional minimum" of a "concrete" and "imminent" injury that could provide them with Article III standing to challenge the district court's sealing order.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).  Under Article III, the requisite injury must be "distinct and palpable," and "affect the [individual] in a personal and individual way."  *Lane v. Holder*, 703 F.3d 668, 672 (4th Cir. 2012) (internal citations omitted).  Courts are not empowered "to decide abstract questions of wide public significance," or to resolve "generalized grievances shared in substantially equal measure by all or a large class of citizens."  *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (internal quotation marks omitted).  Consumer Groups do not and cannot identify any

---

[4]   Although a denial of permissive intervention is reviewable by this Court, in the absence of an abuse of discretion, this Court should "dismiss the appeal from the district court's denial of [a] motion for permissive intervention under Rule 24(b)."  *McClelland*, 111 F. App'x at 697.

"personal and individual" injury that they would suffer from non-disclosure of the sealed material in this lawsuit, apart from the *general* interest—shared by the public at large—of desiring access to information.

To be sure, this Court has held in a handful of prior cases that certain parties have standing to assert a First Amendment or common-law claim for public access of documents. But these cases do not alleviate a litigant of the obligation to identify a "distinct and palpable" injury that distinguishes the litigant from the general public. Indeed, most cases before this Court in which a party challenged a motion to seal involved members of the *press*, which have a special obligation and right under the First Amendment to inform public discourse. *See, e.g.*, *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988) (Baltimore Sun); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 250-54 (4th Cir. 1988) (Washington Post). In those few cases in which a member of the public at large was permitted to assert a right-of-access claim, that person has had a specialized interest in the documents in question. *See, e.g.*, *Rosenfeld v. Montgomery Cnty. Pub. Schs.*, 25 F. App'x 123, 130-31 (4th Cir. 2001) (permitting parties to the underlying lawsuit to challenge sealing order); *Appelbaum*, 707 F.3d at 290 (permitting Twitter subscribers to assert claim for access to documents relating to government investigation into their own accounts). Here, Consumer Groups have no such direct interests separate and apart from any other member of

the public.  Nor does it matter that the putative intervenors purport to represent "consumers," as that broad designation could apply to practically every member of the general public and most corporations too.[5]

Limiting standing to parties concretely affected by the district court's sealing order is particularly appropriate given the unique circumstances of this case, in which the Government vigorously litigated both the merits and the sealing issues in the district court and, having lost on both issues below, declined to undertake an appeal of either.  "Standing to defend on appeal in the place of an original defendant . . . demands that the litigant possess a *direct* stake in the outcome." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (emphasis added) (internal quotation marks omitted).  Since the Government made a determination not to further pursue the merits or the sealing issue, Consumer Groups cannot enter the fray and stand in the Government's shoes when they lack any "direct stake" in publication of the documents.  That is especially true where, as here, the district court concluded that the sealing order was necessary to provide full relief to Company Doe on its APA claims, and those APA claims are not before this Court.

---

[5] The real interest of Consumer Groups is in enforcing the database, *see* Dkt. 11-cv-2958, Doc. No. 52-1, at 3-5, and finding out about this particular product and incident.  The broader First Amendment issues they raise are merely a means to an end.  The Consumer Groups are not the "press" merely because Consumers Union is affiliated with Consumer Reports, which primarily analyzes and rates products and whose raison d'être is not—like a traditional media organization—to transmit information regardless of what is transmitted.

Nor does the CPSIA itself provide Consumer Groups with the required standing. The CPSIA does not create any private cause of action for third parties to challenge the Government's determination that a particular incident report is materially inaccurate and should not be placed on the saferproducts.gov database. *See* 15 U.S.C. § 2055a. Rather, Congress entrusted the CPSC with the authority and responsibility to ensure that materially inaccurate reports were either appropriately corrected or removed from the database. *See id.* This check on the accuracy of incident reports was intended to *benefit* consumers by limiting the universe of available information to reliable data about consumer products. And, of course, by providing interested parties with the right to provide "notice" to the CPSC that a particular report was inaccurate, Congress intended to protect companies from the publication of false, potentially damaging safety reports. *Id.* Consumer Groups, in short, have not suffered a judicially cognizable injury, and thus, this Court lacks jurisdiction over this appeal.

## II. The District Court Did Not Abuse Its Discretion by Limiting Public Access to the Judicial Proceedings to the Extent Necessary to Effectuate Its Judgment.

The district court's orders sealing various documents and permitting the use of a pseudonym were appropriately tailored to prevent Company Doe from suffering the same injury it sought to avoid by bringing suit. Consumer Groups fail adequately to address the fact that Company Doe's judicial remedy is destroyed if the pseudonym and related sealing orders are reversed. They argue

25

simply that it is wrong to "equate[] the right to avoid publication of a report in the database with the right to avoid public discussion of both the report and the Company's lawsuit about it."  CG Br. at 32.  But under the CPSIA and the APA, the appropriate statutory remedy is non-disclosure of the materially inaccurate report.  Therefore, disclosing the complaint or disclosing facts that are equivalent to disclosing the complaint through court documents would vitiate the statutory non-disclosure remedy.

If pre-publication challenges to government database decisions could not be pursued without disclosing the very information the government seeks to publish, it would do more than chill—it would freeze—judicial challenges.  Therefore, the administrative mechanism Congress created would be meaningless because it would be subject to CPSC's unfettered discretion.    Without an effective administrative and judicial mechanism, the contents of the database would not be limited—as Congress intended—to information that is both accurate and useful to consumers.

A.      **The Common Law Creates No Broad Right of Access to the Sealed Documents.**

It is well established that "[t]he common law presumption of access [to judicial documents] may be overcome if competing interests outweigh the interest in access."  *Stone*, 855 F.2d at 180.  This Court has recently confirmed that the

competing interests need not "heavily outweigh" but may merely "outweigh" the common-law right of access. *Appelbaum*, 707 F.3d at 293 n.12.

Plaintiff's ability to seek an effective remedy is part and parcel of its First Amendment right to petition the courts for a redress of grievances. *Bhd. of R.R. Trainmen v. Virginia ex. rel. Va. State Bar*, 377 U.S. 1, 7 (1964) (rejecting a professional conduct provision that "handicapped" individuals' "right to petition the courts," as guaranteed by the First Amendment); *NAACP v. Button*, 371 U.S. 415, 429-30 (1963) (holding that the First Amendment protected NAACP efforts to help others seek judicial redress by recommending counsel). The right to petition is "one of 'the most precious liberties safeguarded in the Bill of Rights'" and "is implied by '[t]he very idea of a government, republican in form.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002) (quoting *United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967) and *United States v. Cruikshank*, 92 U.S. 542, 552 (1876)). Accordingly, the district court recognized that insufficient redactions "would reduce *Plaintiff's* First Amendment interest in petitioning the Court for redress of its grievances to a Hobson's choice, a figurative fork that would fly in the face of fundamental notions of fairness." Dkt. 11-cv-2958, Doc. No. 74, at 70.

In furtherance of these important constitutional interests, it is common for courts to enter sealing orders or other protective orders where, as here, the

confidentiality of documents or information is integral to the judicial relief sought. For example, sealing orders and protective orders are frequently used in trade secrets cases to ensure that parties bringing suit for trade secrets infringement are not forced to reveal their trade secrets (thereby eliminating any benefit from pursuing judicial relief). *See, e.g.*, *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 415 (4th Cir. 1999) ("To prevent disclosure of the In-Line Technology during the course of the *Cheil* litigation, Hoechst secured a protective order that required all documents relating to the In-Line Technology to be filed under seal."); *see also* Note, *All Courts Shall Be Open: The Public's Right to View Judicial Proceedings and Records*, 52 Temp. L.Q. 311, 335 (1979) ("parties with unique manufacturing processes would avoid the use of the judicial process if resolution of disputes required disclosure of the details of an item which generates income"). Similarly, in libel cases, "[j]udicial records containing . . . libels may also be sealed *if their exposure or promulgation threatens more harm similar to that already alleged*." 52 Temp. L.Q. at 344 (citing *Schmedding v. May*, 48 N.W. 201, 202 (1891); *Munzer v. Blaisdell*, 48 N.Y.S.2d 355, 356 (1944)) (emphasis added). Likewise, courts routinely use *in camera* inspection to review documents that agencies withheld from FOIA requesters in order to assess whether the documents are indeed exempt from disclosure. *See, e.g.*, *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 275 (4th Cir. 2010); *Charlotte-Mecklenburg*

28

*Hosp. Auth. v. Perry*, 571 F.2d 195, 202 (4th Cir. 1978). Finally, this Court has affirmed the use of sealing orders to prevent the revelation of confidential information in a suit brought against a former in-house counsel based on the alleged disclosure and misappropriation of confidential information. *See X Corp. v. Doe*, 805 F. Supp. 1298, 1300 n.1, 1302 (E.D. Va. 1992); *aff'd*, 1994 WL 52197 (per curiam).

Consumer Groups incorrectly cite *Under Seal v. Under Seal* for the proposition that reputational harm to a company is insufficient to support a motion to seal. CG Br. at 30 (citing *Under Seal v. Under Seal*, No. 94-1171, 1994 WL 283977 at *3 (4th Cir. June 27, 1994) (per curiam) (citing *Brown & Williamson Tobacco Corp. v.* 710 F.2d 1165, 1179 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984))). The context of the Fourth Circuit's decision in *Under Seal* reveals that the case does not reject reputational harm as the basis for a motion to seal, except in dicta. Instead, the Court found that much of the information identified *was already public* and the company did not specifically demonstrate that reputational harm would result from unsealing the remaining information under seal. *Under Seal*, 1994 WL 283977 at *3. Instead of asserting that reputational harm could never *support* a motion to seal, in that case the "*harm alleged* [was] actually illusory." *Id.* (emphasis added).

Moreover, Consumer Groups misconstrue Company Doe's position by

suggesting that the sole justification for the sealing order here is the prevention of the type of reputational harm that can occur in any lawsuit. It is not ordinary reputational harm that Company Doe seeks to avoid but the very type of harm— maligning manufacturers with false and misleading incident reports—that Congress sought to preclude by creating this unique statutory scheme. Company Doe's cause of action is based not solely on the protection of its business but more broadly on the carefully reticulated Congressional construct that invites only reliable information to inform the public of dangerous products. Consumer Groups and *amici curiae* argue at length about the public health purposes of the database, but Congress clearly believed that the database's public health purposes were best served by a balanced scheme that ensured a higher quality of information than the average Internet forum.[6] Thus, where disclosure of court records would inflict the very harm the lawsuit seeks to avoid or chill participation in litigation, sealing is

---

[6] *See* Note, *Cyber-Libeling the Glitterati: Protecting the First Amendment for Internet Speech*, 9 Vand. J. Ent. & Tech. L. 897, 911-12 (2007) (describing how some scholars "have argued that defamation law should not apply" to statements made "in the Internet's free-for-all environment," and recognizing that "[t]his proposal inadequately addresses the concerns raised by cyber-libel today. Eliminating all claims of Internet defamation would result in harm to individuals who are unable to adequately counteract posted defamatory statements. The belief that a simple posted response on the Internet provides an adequate remedy for defamation is naïve."). This trenchant analysis is especially true where, as here, the false and misleading posting would have the Government's imprimatur.

appropriate.

In short, "the right to inspect judicial records is burdened by restraint[s] designed to ensure the efficient functioning of the courts. Courts will not allow inspection of their records if it appears that such a practice may harm others." *All Courts Shall Be Open*, 52 Temp. L. Q. 311, 343. Article III judges have "the inherent power to fashion appropriate relief," *Hamlin v. Warren*, 664 F.2d 29, 30 (4th Cir. 1981), and in unique circumstances like this case, where Congress has mandated non-disclosure as a statutory remedy, appropriate relief may include reasonable limits on the public's access to court records.[7]

### B.    The First Amendment Creates No Broad Right of Access to the Sealed Documents.

Consumer Groups also err in arguing that the First Amendment provides an independent right of access to the sealed documents, and therefore, that only a compelling interest could justify their continued protection from disclosure. This Court has made clear that the First Amendment provides a right of access to documents only where "experience and logic" require it; that is, where "the place

---

[7] This makes all the more sense in the "electronic age," which has dramatically increased the availability of information about litigants and makes it easier to deduce the identity of a litigant or the circumstances of a particular incident underlying a sealed case. In this climate, a failure to grant requests to protect plaintiffs' identities may have "a chilling effect on public participation in the judicial system." Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. Kan. L. Rev. 195, 256 (2005).

and process have historically been open to the press and general public, and (2) . . . public access plays a significant positive role in the functioning of the particular process in question." *Appelbaum*, 707 F.3d at 291 (citation omitted). "[B]oth the experience and logic prongs are required" to be satisfied before the First Amendment right of access attaches to a particular document. *Id.*

Under this "experience and logic" test, the First Amendment right of access indisputably does not apply to the sealed documents. With respect to the first prong, there is no "historic[]" tradition of making available to the public materially inaccurate incident reports submitted to the CPSC or related factual findings. Indeed, the CPSIA is not yet five years old, and saferproducts.gov launched in 2011; yet, this is the first, and to Company Doe's knowledge, *only* lawsuit of its kind. For that reason alone, the First Amendment right does not attach. *See Appelbaum*, 707 F.3d at 291 (holding there was "no long tradition of access" for orders issued under the Stored Communications Act, which was enacted in 1986). It matters not that the court's findings were presented in a summary-judgment decision, and that "there is an exceedingly long history of access to judicial opinions and orders." *Id.* at 291 n.8 (internal quotations omitted). "This interpretation of the First Amendment right of access is too broad," and conflicts with this Court's holdings that the right to access "extends only to '*particular* judicial records and documents.'" *Id.* (quoting *Va. Dep't of State Police v. Wash.*

*Post*, 386 F.3d 567, 575 (4th Cir. 2004)); *see also Stone*, 855 F.2d at 180.  First Amendment access turns on the historic substance, not the judicial form, of the documents under seal.  In the absence of any history of public access to the records produced in administrative and judicial proceedings relating to the CPSIA, the First Amendment does not apply.[8]

Similarly, under the second prong, public access does not "play[] a significant positive role in the functioning of the particular process in question." *Appelbaum*, 707 F.3d at 291 (citation omitted).  "Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly."  *Press-Enterprise Co.*, 478 U.S. at 8-9.  Thus, the First Amendment right of access does not apply to documents produced in grand jury proceedings, search warrant proceedings, or certain pre-indictment investigative proceedings, "[b]ecause secrecy is necessary for the proper functioning of the [process], . . . [and] openness will frustrate the government's operations." *Appelbaum*, 707 F.3d at 292.  The same is true here:  the reliability of incident reports on the CPSC's consumer database depends on the diligence of corporations like Company Doe availing themselves of the administrative process to seek non-publication of inaccurate reports.  If companies understood that the reports would

---

[8]  This case thus differs from *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988), which involved a garden-variety defamation claim.

be published anyway in the course of judicial proceedings, no one would challenge the reports to begin with—which would reduce the value of the database for consumers and cause material harm to affected businesses. The "proper functioning" of the CPSIA depends on the availability of sealing orders.

Even if all of the documents at issue were subject to the First Amendment standard, the sealing order was still proper, because "[a]ccess may be denied if closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Wash. Post Co.*, 807 F.2d at 390 (internal quotation marks omitted); *see also Appelbaum*, 707 F.3d at 290 (compelling interests may justify the sealing of documents to which the First Amendment right of access applies).

Fulfilling Congress's intent to create a database of incident reports that provides consumers with useful information and ensures meaningful protections for manufacturers constitutes a "compelling governmental interest" that outweighs the public's right to access this erroneous incident report. Courts have frequently recognized that similar private interests are sufficiently compelling to outweigh the First Amendment right of access. *See Level 3 Comm'cns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580 (E.D. Va. 2009). Such private interests can be based on "'the content of the information at issue, the relationship of the parties, or the nature of the controversy.'" *Id.* at 580 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984)). For example, courts may seal

documents that disclose trade secrets even if those documents are subject to First Amendment protection, so long as proper procedural requirements are followed. *Id.* at 581; *see also Woven Elecs. Corp. v. Advance Grp., Inc.*, 1991 WL 54118, at *6 (4th Cir. Apr. 15, 1991) (sealing appropriate to prevent disclosure of trade secrets in case where plaintiff sued for misappropriation of trade secrets, even though some of the documents were submitted at trial).[9]    Just as in a misappropriation of trade secrets case, Company Doe would sacrifice the remedy it sought and won if the report were disseminated through the publication of the court records.   The nature of the controversy here is such that sealing would be appropriate, even if some of the documents were subject to First Amendment protection.

In finding that Company Doe's interests outweighed the public's right of access, the district court followed all relevant procedural requirements (as embodied in the local rules regarding sealing) and made copious findings with regard to the appropriateness and extent of sealing.   This Court has found that "[t]he mere existence of a First Amendment right of access . . . to a particular kind of document does not entitle the press and the public to access in every case," and clarified that "the district court must address the question [of access] at the time it

---

[9]   Company Doe cites this case, although it is unpublished, because no published decision would adequately address the same issue.  *See* Loc. R. 32.1.

grants" the dispositive motion that establishes the First Amendment right of access. *Rushford*, 846 F.2d at 253.

### C.   The Order Granting Company Doe Leave to Proceed under a Pseudonym Was an Appropriate Exercise of the District Court's Discretion.

For similar reasons, the district court was well within its broad discretion when it permitted Company Doe to proceed under a pseudonym. Courts— including this Court—have recognized that the "rare dispensation" of leave to use a pseudonym is appropriate to protect plaintiffs from suffering the harm they seek to avoid by filing suit. *See Jacobson*, 6 F.3d at 238, 239. In *Under Seal v. Under Seal*, this Court affirmed a district court decision sealing the record and permitting the use of pseudonyms where the central dispute was between a company and its former in-house counsel who allegedly took a variety of confidential documents from the company. No. 93-1495, 1994 WL 52197, at *1 (4th Cir. Feb. 23, 1994) (per curiam).[10] Further disclosure of confidential information was threatened. This Court agreed with the district court that it was "justified" to seal the "record and opinion" in the court below in order to protect the parties' "confidentiality." *Id.* There, as here, public access to the parties' identities and much of the record would vitiate judicial relief, because the confidential information for which protection

---

[10]   Company Doe cites this case, although it is unpublished, because no published decision would adequately address the same issue. *See* Loc. R. 32.1.

was sought would be disclosed or put at risk of disclosure.  *See X Corp.*, 805 F. Supp. at 1300 n.1.

This Court's decision in *Under Seal v. Under Seal* is consistent with precedents from other courts.  Courts regularly grant similar motions for pseudonymity when recourse to an effective remedy is at stake.  *See, e.g.*, *Wermers*, 557 F.2d at 176 ("Appellant brought this action anonymously, and to require her to disclose her participation . . . at this stage would substantially nullify the privacy right she seeks to vindicate"); *Doe v. Alaska Dep't of Pub. Safety*, No. 96-35873, 1997 WL 547941 at *1, at *3-4 (9th Cir. Sept. 2, 1997) (holding that disclosure of plaintiffs' identity in a case where plaintiffs challenged community registration of sex offenders would "deny them the very relief they seek" and therefore that "[u]nder these circumstances, the public's right of access is subordinate to the interest in resolving this challenge to a governmental policy"); *Roe v. Ingraham*, 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973) ("Here, . . . if plaintiffs are required to reveal their identity prior to the adjudication on the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid").  *See also Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (holding that anonymity was appropriate where "the injury litigated against would be incurred as a result of disclosure of the plaintiff's identity" but that the plaintiff before the court did not present such a case).

In arguing against the district court's decision on pseudonymity, Consumer Groups mischaracterize the test this Court utilized in *James v. Jacobson*. In *Jacobson*, the Court considered the factors that were "relevan[t] to th[at] case," namely, (1) whether anonymity is meant "to preserve privacy in a matter of sensitive and highly personal nature"; (2) whether the party or "innocent non-parties" are at risk of being retaliated against; (3) the ages of those involved; (4) "whether the action is against a governmental or private party"; and (5) "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." 6 F.3d at 238.

Consumer Groups concede that the *Jacobson* factors are a "non-exhaustive list of considerations," but then measure this case against those factors. CG Br. at 44. Yet, as the district court recognized, "the *Jacobson* court made clear that there is no hard-and-fast rule for determining the propriety of permitting a party to proceed under a pseudonym." Dkt. 11-cv-2958, Doc. No. 74, at 72 (citing *Jacobson*, 6 F.3d at 238). Indeed, Consumer Groups misconstrue the central message of the *Jacobson* case by stating that "in general, corporations ought not to be permitted to proceed pseudonymously." CG Br. at 45. Instead, the *Jacobson* court simply made clear that district courts should consider the relevant factors that constrain their discretion in permitting use of a pseudonym, rather than issue rulings "driven essentially by . . . personal predilection." *Jacobson*, 6 F.3d at 238.

38

The court looked at prior case law and "gleaned" various factors relevant to the decision before addressing the factors "that ha[d] relevance to th[at] case." *Id.* It is unlikely that the *Jacobson* court intended its fact-specific analysis to prohibit the use of pseudonyms by corporations in the future, particularly in light of the fact that it decided *Under Seal v. Under Seal* (approving the use of a pseudonym by a corporation) mere months after deciding *Jacobson*.[11]

Indeed, this Court's decision in *Under Seal v. Under Seal* is consistent with a trial court decision discussed by its sister circuit in *John Doe v. A Corp.*, in which a former in-house counsel had pursued an employee benefits case against its former employer, for whom it had provided legal advice about employee benefits: "To prevent identification of the company and the possible disclosure of confidential information concerning its affairs, the district court granted the defendant corporation's motion to seal the record; [and] require[d] the suit to be prosecuted without revealing the name of either the lawyer or the corporation. . . ." *John Doe v. A Corp.*, 709 F.2d 1043, 1044 n.1 (5th Cir. 1983). Thus, the case law does not support the proposition that corporations should be denied the protection of pseudonymity properly granted to individuals to protect their day in court.

---

[11] Courts have often allowed companies to proceed under a pseudonym. *See, e.g.*, *John Doe Corp. v. United States*, 714 F.2d 604 (6th Cir. 1983) (per curiam); *John Doe Corp. v. Miller*, 499 F. Supp. 378 (E.D.N.Y. 1980). The Supreme Court has implicitly endorsed this practice. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 148 n.1 (1989).

Even if the *Jacobson* factors were forced to fit this case like "a square peg in a round hole," pseudonymity would still be appropriate. Dkt. 11-cv-2958, Doc. No. 74, at 72. As the district court found, both of the following factors supported the use of a pseudonym here: (1) the prejudice to Company Doe if pseudonymity were not permitted; and (2) the potential unfairness to the opposing party. *Id.* at 71 (citing *Jacobson*, 6 F.3d at 238). Precluding the use of a pseudonym here would prevent Company Doe from obtaining meaningful relief. Most importantly, under *Jacobson*, the opposing party—the CPSC—incurred no unfairness or prejudice from the use of a pseudonym because the Government was well aware of Company Doe's identity and the facts surrounding this false and misleading incident report. The abandonment of the Government's appeal underscores the ultimate absence of unfairness to the public interest if Company Doe remains anonymous.

### D. The Sealing Order Was Narrowly Tailored.

Although the sealing order covered a number of documents, it was carefully tailored under judicial scrutiny in order to protect Company Doe's remedy and ensure the purposes of the statute. Consumer Groups' only argument to the contrary is that releasing the details of the case would be a boon to Company Doe because the district court sided with Company Doe on the merits. *See* CG Br. at 35 (citing *Rushford*, 846 F.2d at 253); *infra* at 43. Regardless of whether that is true, that argument does not address the extent to which the sealing order was narrowly tailored but rather whether the sealing order was necessary in the first place.

The district court followed the appropriate procedures to evaluate the documents one-by-one and tailor the relief accordingly. After receiving the proposed redactions and arguments from both Company Doe and the CPSC about the extent of redactions, the district court reviewed the proposed redactions and found that they "adequately apprise the public of all essential, nonconfidential information regarding the case." Dkt. 11-cv-2958, Doc. No. 67, at 5; *see In re Wash. Post*, 807 F.3d at 386 (setting forth the appropriate procedure). The district court further found that if it adopted the CPSC's "proposed redactions, it would create an unreasonably high risk that people could identify [Company Doe] and link the challenged report to it. As this is the outcome [Company Doe] sought to obviate by filing suit, and because [Company Doe] prevailed," the district court rejected the CPSC's proposed redactions. Dkt. 11-cv-2958, Doc. No. 67, at 6.[12] Therefore, the sealing order was tailored to advance the interests that the district court found outweighed the public's generalized right of access to court documents. This "record-specific determination . . . 'is one properly made in the first instance from the superior vantage point of the district court.'" *Id.*, Doc. No. 74, at 68 (citing *Va. Dep't. of State Police*, 386 F.3d at 576).

Furthermore, despite the protestations of the Consumer Groups and the

---

[12]  Notably, Consumer Groups never claimed a right to participate in the redactions process, even after filing a motion to intervene in the case.

*amici curiae* about the ability of the public to understand and assess the decision, the substance of this decision has been widely understood and reported by the media and interested parties. *See* CG Br. at 24; Dkt. 12-2209, Doc. No. 44-1, at 26-27.[13]  This coverage demonstrates that the court's reasoning is clear to the average reader despite the redactions. *See, e.g.*, Greg Ryan, *Court's Rebuke of CPSC Lends Weight to Database Gripes*, Law360.com (Oct. 25, 2012) http://www.law360.com/articles/389566/court-s-rebuke-of-cpsc-lends-weight-to-database-gripes (Attached as Appendix); Crowell & Moring, *Federal Court Holds that CPSC's Decision to Publish Report of Harm on Public Database Violates the APA* (Oct. 24, 2012), http://www.crowell.com/NewsEvents/AlertsNewsletters/all/Federal-Court-Holds-that-CPSCs-Decision-to-Publish-Report-of-Harm-on-Public-Database-Violates-the-APA.    Indeed, "because so many of the [c]ourt's conclusions are separate from the specific facts and because Plaintiff made such minimal redactions, for forty-two of the opinion's pages, Plaintiff has proposed zero redactions," and "the total percentage of words redacted is a mere 10.99%."

---

[13]  Although the *amici curiae* express concern about the district court's delay in deciding this matter,  Dkt. 12-2209, Doc. No. 39, at 6-7, should this Court share those concerns, Company Doe should not suffer the consequences of court docket management issues.  Furthermore, the media organizations' arguments about the lack of narrow tailoring with regard to the docket sheet are based on a misconception of the case.  *See* Dkt. 12-2209, Doc. No. 44-1, at 29-31.  As reflected in the district court's most recent order, the clerk was directed to unseal the vast majority of the docket sheet.  *See* Dkt. 11-cv-2958, Doc. No. 88.

Dkt. 11-cv-2958, Doc. No. 67, at 5-6 (citing Doc. No. 59).  Therefore, the public is well aware of "what [this] court [did] and how [this] court goes about adjudicating cases."  *F.T.C. v. AbbVie Prods. LLC*, No. 12-16488, 2013 WL 1149311, at *14 (11th Cir. Mar. 21, 2013).

Most importantly, nowhere do Consumer Groups explain how publicizing the particularities of this false and misleading incident report would improve the public's already clear understanding of the district court's decision, much less advance the public interest in general.  This fact is especially compelling given that the true defender of the public's right to know in this case—the Government—has abandoned any argument that the partial seal should be lifted.

### E.    Unsealing the Sealed Portions of the Record and Revealing Company Doe's Identity Would Inflict a Worse Injury Than Publication of the Materially Inaccurate Report on the Database.

Consumer Groups posit that unsealing this case in its entirety would cause Company Doe no harm because the district court "vindicate[ed] and prais[ed] Company Doe and its product."  CG Br. at 35.  Yet it defies common sense that Company Doe would not suffer harm from the significant publicity that would accompany this case.  The incident report continues to be materially inaccurate and continues to bear the Government's imprimatur—the CPSC vigorously litigated this case and continues to maintain, despite abandoning the appeal, that it disagrees with the court's reasoning.  *See* Dkt. 11-cv-2958, Doc. No. 83 (CPSC's statement cautioning that its decision to withdraw its appeal should not be interpreted as a

43

concession that the report is inaccurate).  The district court found that the report would be misleading to consumers—and Consumer Groups have no standing to challenge that decision.  *Id.*, Doc. No. 74, at 47.  It is highly unlikely that the district court's vindication of the product could nullify the misleading effect upon the public, which knows that the CPSC insisted on publishing the report in the face of five submissions of material inaccuracy and nearly a year of litigation.[14]

Furthermore, Consumer Groups' argument that the report should be subjected to the "marketplace of ideas," CG Br. at 33, ignores the fact that Congress decided that "marketplace" should not contain false and misleading reports injurious to a manufacturer's reputation and economic well-being.  Instead, Congress intended that only certain reports should be released, and only after manufacturers had an opportunity to engage in a quasi-adversarial process protected under APA procedures.   Releasing all incident reports in court proceedings—regardless of their material inaccuracy, which would preclude their release in the CPSC database—is a perverse result that stands Congressional intent

---

[14]   In fact, statistics collected by the Government Accountability Office indicate that visits to saferproducts.gov peaked after the redacted district court opinion was made public in October 2012.  *See* Government Accountability Office, *Consumer Product Safety Commission: Awareness, Use, and Usefulness of Saferproducts.gov*, 11 (Mar. 11, 2013), http://www.gao.gov/assets/660/652 916.pdf (last visited Apr. 22, 2013).  This demonstrates that the unsealing of the facts of this case would attract significant publicity.  That the report would continue to bear the Government's imprimatur only compounds the harmful effect of that publicity.

on its head.  Moreover, it is not Company Doe's position that the district court's injunction bars all discussion of the underlying incident, but merely that the report, which fails to satisfy the statutory standard for publication, and the identity of the manufacturer, should not be published or disseminated through court documents.

## III.   Regardless Of The Merits Of The Sealing Issue, Consumer Groups Cannot Pursue This Appeal In The CPSC's Absence.

### A.   The District Court Properly Exercised its Sound Discretion When It Determined That Intervention Was Not Appropriate.

In this case, the district court properly exercised its "sound discretion" rejecting Consumer Groups' motions to intervene permissively.  *Pennington*, 352 F.3d at 892.  It is "wholly discretionary" whether the district court should permit a third party to intervene permissively in a given case.  7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (3d ed. 1998); *see also McHenry v. Comm'r*, 677 F.3d 214, 222 (4th Cir. 2012) ("[r]egardless of what a court concludes in considering [certain] factors, it may still either grant or deny intervention").  Particularly in light of unique considerations here, the district court's decision should not be disturbed.

### 1.   No Active Case In Controversy Permits Consumer Groups' Intervention.

"By its very nature[,] intervention presupposes pendency of an action in a court of competent jurisdiction" because it is an "ancillary proceeding in an already instituted suit."  *Black v. Cent. Motor Lines*, 500 F.2d 407, 408 (4th Cir.

1974); *see also Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 840 (4th Cir. 1999) (describing principle stated in *Black* as "well-settled law" and citing authorities). No underlying action is pending; therefore, the motion to intervene is untimely, and no ancillary intervention proceeding may be pursued in the absence of the underlying suit. Rule 24(b) itself envisions that the proposed intervenor's "'claim or defense *and the main action*'" have a common question of law or fact, *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) (quoting Fed. R. Civ. P. 24(b)) (emphasis added)—yet here, no main action exists.

Consumer Groups have argued that "the fact that the underlying dispute between the parties has been resolved [does not] render a motion to intervene untimely." CG Br., at 18-19 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778-80 (3d Cir. 1994)). However, the Third Circuit case to which they cite distinguished the Fourth Circuit's decision in *Black*, and the Third Circuit's earlier decision in *Littlejohn v. Bic Corp.*, 851 F.2d 673, 677 n.7 (3d Cir. 1988), which favorably cites *Black*.[15]

Furthermore, although courts have sometimes allowed post-judgment intervention in other cases, those circumstances have been limited. For example, in *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977), the court

---

[15] The *Black* court distinguished—but did not rule on—cases in which "intervention was permitted so that the intervenor could prosecute an appeal which an existing party had decided not to take." 500 F.2d at 408.

permitted post-judgment intervention to challenge a class certification order, but in that case the intervenor was a member of the class and therefore had an individualized interest in the merits of the case. By contrast here, Consumer Groups have never claimed that they have standing to appeal the district court's order on the merits.

In addition, intervention at this late stage would prejudice Company Doe because it would "require[] substantial additional litigation" that would not otherwise occur. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989); *see also United States v. Blue Chip Stamp Co.*, 272 F. Supp. 432, 436-40 (C.D. Cal. 1967), *aff'd sub nom. Thrifty Shoppers Crip Co. v. United States*, 389 U.S. 580 (1968); Dkt. 11-cv-2958, Doc. No. 74, at 69 (Consumer Groups' arguments "virtually identical" to CPSC's). For that reason too, the district court did not abuse its discretion by denying as untimely the Consumer Groups' permissive intervention.[16]

### 2. The District Court's Sealing Order Is Necessary to Effectuate the Underlying Judgment, Which the Consumer Groups Concede They Have No Right to Appeal.

In this unique case, the remedy and decision to seal are inextricably bound. Consumer Groups cannot pursue an appeal of the underlying judgment, and thus

---

[16] This Court's recent decision in *Stuart v. Huff* also establishes that the prospect of additional litigation is a valid reason to deny intervention that would "consume additional resources of the court *and the parties*." *Stuart*, 706 F.3d 345, 349 (4th Cir. 2013) (emphasis added).

they may not appeal the sealing order entered to effectuate that judgment.  *Cf.*
*Diamond v. Charles*, 476 U.S. 54, 68 (1986) (intervenor lacking Article III
standing could not "keep the case alive in the absence of [the original party] on []
appeal").

The district court's sealing order was "inform[ed]" by its "prior
determination that the [challenged] report is materially inaccurate and injurious to
Plaintiff's reputation."  Dkt. 11-cv-2958, Doc. No. 74, at 66.  The district court's
sealing order was also based on its factual findings concerning this case, which
Consumer Groups cannot collaterally challenge on this appeal, and which are not
clearly erroneous.  *Id.* at 68-69.  The district court's procedural protections were
integral to the final judgment entered on the APA issues because they were
necessary to prevent "an unreasonably high risk that people could identify Plaintiff
and link the challenged report to it," which would defeat the purpose of Company
Doe's successful suit.  *Id.*, Doc. No. 67, at 6.  The sealing order is integral to the
final judgment because in this particular case, the statutory remedy is non-
publication and non-dissemination.  *See id.*, Doc. No. 74, at 73.

Absent an underlying case in controversy with Company Doe, Consumer
Groups may not challenge a sealing order premised on factual findings integral to
the underlying judgment.  Where post-judgment intervention "disturbs the final
adjudication of the parties' rights," intervention is not appropriate.  *Bond v.*

*Utreras*, 585 F.3d 1061, 1071 (7th Cir. 2009).

> **3.    The Consumer Groups' Cases Are Inapposite Either Because the Sealing Issue Was Not Vigorously Litigated by the Parties or Was Incidental to the Underlying Judgment.**

The cases the Consumer Groups have cited in support of their attempted intervention are inapposite and fail to demonstrate that in this unique case, the district court abused its discretion by denying the motion to intervene.  In *none* of the cases was the sealing order necessary to effectuate the underlying judgment in the case.  *Cf. Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 777 (1st Cir. 1988) (permitting intervention where parties sought access to ordinary, non-confidential discovery materials).

In one tranche of cases cited by Consumer Groups, the proposed intervenor had a particularized interest in the documents (despite broadly asserting the public's right to the documents).  *See, e.g.*, *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1044 (D.C. Cir. 1998) (intervention permitted for individuals who brought claims "nearly identical" to the underlying action) (internal quotation marks omitted); *Liggett Grp., Inc.*, 858 F.2d at 776 (Public Citizen intervened to represent "group of public health organizations" seeking research created by consultants to cigarette manufacturer); *see also Black*, 500 F.2d at 408 (citing "unique factual situations" in which parties with particularized interest in suit were permitted to intervene post-judgment.).

In addition, some courts have allowed intervention to assert a public interest

in court materials when both parties have consented to a court order sealing the material or maintaining its confidentiality. *See, e.g.*, *Pansy*, 23 F.3d at 775 (newspapers permitted to intervene to challenge order maintaining confidentiality of a settlement agreement; court makes no reference to any party to underlying action challenging confidentiality order); *In re Associated Press*, 162 F.3d 503, 506-07 (7th Cir. 1998) (newspapers could intervene to challenge use of video deposition for governor's trial testimony, to which parties had agreed).

In the absence of a particularized interest in the materials sought, and in the presence of thorough and vigorous litigation by the Government, Consumer Groups' case law is inapposite.

Notably, Consumer Groups have pointed to no similar opinions issued by this Court clearly asserting the propriety of using Rule 24(b) to challenge confidentiality or sealing orders in civil cases. Instead, Consumer Groups have primarily pointed to a criminal case in which the Court summarily granted media groups leave to intervene on appeal (nowhere suggesting that the parties to the criminal case opposed intervention). *See United States v. Moussaoui*, 65 F. App'x 881, 884 (4th Cir. 2003). Alternatively, the Consumer Groups point to cases in which the court "has decided on the merits [an appeal] in which third parties intervened to seek access to judicial records" but did not consider the merits of the intervention issue in the opinion. *See* Dkt. 12-2209, Doc. No. 37, at 18 (citing *Va.*

*Dep't of State Police*, 386 F.3d at 572; *Rushford*, 846 F.2d at 250). This distinguishable case law provides no relevant guidance in resolving the intervention issue, much less in demonstrating an abuse of discretion by the district court.

Indeed, this Court's recent decision in *Stuart v. Huff* strongly supports the district court's sound discretion in denying intervention. 706 F.3d 345, 349-50 (4th Cir. 2013). This Court deferred to the trial court regarding permissive intervention because the trial court is in the "best position" to make such decisions. *Id.* at 350. Where a government agency adequately represents the putative intervenor, deference to a district court's denial of intervention is particularly appropriate because "it is the government's basic duty to represent the public interest" and interference with the Government's litigation strategy "would greatly complicate the government's job." *Id.* at 351. Although the Government presumably continues to disagree with the district court's decision, it declined to appeal both the judgment on the merits and the sealing order. The final judgment for Company Doe cannot be disturbed. A "contrary rule" would inflict undue harm on "the government's representative function." *Id.* at 355. The Government's critical "representative function" is reflected by its vigorous litigation of the very issues raised by Consumer Groups as much as by its decision to abandon its appeal. This decision should be dispositive in resolving Consumer

Groups' intervention status.

**B.    The District Court Had Jurisdiction to Withdraw Its Conditional Grant of Post-Judgment Intervention.**

The district court also correctly found that it had jurisdiction to grant Company Doe's motion to reconsider and withdraw its conditional grant of post-judgment intervention because its order on that motion "acts to aid the Fourth Circuit's resolution of the appeal by making it clear that, in the exercise of its sound discretion, the Court does not believe that this is an appropriate case for permissive intervention."   Dkt. 11-cv-2958, Doc. No. 86, at 3.   As Consumer Groups concede, "permitting the district court to act [on an intervention motion post-judgment] would be more consistent with this Court's pragmatic approach to the powers of a district court during appeal," insofar as "a district court does not lose jurisdiction to proceed as to matters in aid of the appeal," and the "grant of intervention . . . reliev[es the appellate court] from considering the substance of an issue it does not need to consider."   *See* CG Br., at 15-16 (internal citations and quotation marks omitted).   Company Doe agrees that the district court's latest, more definitive ruling on whether Consumer Groups are proper intervenors considerably clarified and narrowed the issues presented on appeal, thereby acting in "aid" of the appeal. *See, e.g.*, *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001).   Consumer Groups cannot credibly claim that the district court only has jurisdiction post-appeal in cases where the district court *grants* a request for

intervention, but not in cases where it revokes a conditional, post-judgment grant of intervention.

Furthermore, the district court specifically retained jurisdiction over the intervention issue, on which it did not act at all until *after* Consumer Groups filed their notice of appeal. Dkt. 12-2209, at 5 n.4. The district court had inherent authority to entertain a motion for reconsideration of the grant of intervention "for good cause shown." *Id.* *Compare with Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 285 (4th Cir. 2000) (district court dismissed case but retained jurisdiction to manage a confidential settlement agreement).

## C.    Consumer Groups Also Fail to Satisfy the Strict Standard for Pursuing This Appeal As a Non-Party.

Absent intervenor status, Consumer Groups cannot appeal this case. Consumer Groups argue they can appeal as a non-party, since they filed objections to the motion to seal pursuant to a local rule. CG Br. at 19; D. Md. Loc. R. 105(11). To the extent the rule confers on *any* non-parties a right to participate, it merely contemplates that persons may file objections, not that they may appeal any adverse judgment. The rule does not establish "a new exception to 'the general rule'" that only parties or intervenors may appeal a district court judgment. Dkt. 12-2209, Doc. No. 59-1, at 17 n.3 (quoting *Kenny*, 820 F.2d at 667).

This Court has permitted non-parties to appeal only in rare circumstances where the non-party "participated *significantly* in the proceedings below" and had

"a *substantial* interest in the outcome of th[e] proceedings." *Kenny*, 820 F.2d at 668 (emphases added). Pursuant to this standard, this Court allowed a stock ownership plan participant to appeal as a non-party because he had a "direct financial interest" in the outcome of the case and was authorized by the court to participate in relevant communications to or from the fund's fiduciary. *Id.* Similarly, non-parties were permitted to appeal when they jointly "initiated" the underlying suit, co-signed all the plaintiff's pleadings, filed other pleadings on their own behalf, and initiated a separate suit regarding the same issue, *Buckner v. Schaefer*, No. 93-6547, 1993 U.S. App. LEXIS 33454, at *1 - 4 (4th Cir. Dec. 22, 1993) (per curiam); and where the appealed order denied an organization's *in forma pauperis* application, and the non-party was a principal of the organization whose financial records were considered by the court that ruled on the application. *Wright v. Sumter Cnty. Sch. Dist. #17*, No. 94-2534, 1995 U.S. App. LEXIS 4134, at *1-3 (4th Cir. Mar. 2, 1995) (per curiam).[17] These cases represent unusual circumstances in which non-parties had a unique legal relationship with a principal party. There is no such relationship between Consumer Groups and the CPSC. Nor have Consumer Groups established that they are sufficiently bound by the sealing order to appeal as a non-party under *Kenny*'s substantial interest test. Dkt.

---

[17] Company Doe cites these cases, although they are unpublished, in order to address the full spectrum of such cases. *See* Loc. R. 32.1.

12-2209, Doc. 62, at 19.

Consumer Groups argue that "[i]t would be anomalous [for the local rules] to provide an opportunity for interested parties to object a proposed seal and then deny them the opportunity to seek review of an adverse decision." CG Br. at 20. The local rule ensures that the public has reasonable notice of a sealing request and the district court can take any objections into account when it rules on the request. *Stone*, 855 F.2d at 181. Yet the purpose of the local rule is simply to ensure that district courts do not "make [the] decision to seal . . . documents without benefit of [the public's] arguments for access." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). This local rule is clearly a public notice provision; it does not mean to confer party status on potentially hundreds of persons. Here, the public had reasonable notice of the sealing request and opportunity to object, and Consumer Groups were the only ones to do so. Their arguments were considered by the district court, although, as the district court noted, "many of the arguments that the Consumer Groups ma[d]e in their Objection to [the] Motion to Seal duplicate[d] arguments" already made by the CPSC. Dkt. 11-cv-2958, Doc. No. 74, at 9-10.

## CONCLUSION

For these reasons, Company Doe respectfully requests that this Court affirm the district court's decision denying Consumer Groups' motion to intervene and, therefore, dismiss this appeal. In the alternative, Company Doe requests that this

Court affirm the district court's orders sealing various documents and protecting the use of "Company Doe" as a pseudonym in order to ensure the viability of the substantive judicial relief Company Doe was granted below.

Dated: April 22, 2013                    Respectfully submitted,


                                          s/ Baruch A. Fellner
                                         Baruch A. Fellner
                                            *Counsel of Record*
                                         Thomas M. Johnson, Jr.
                                         Amanda C. Machin
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Ave., N.W.
                                         Washington, D.C. 20036
                                         (202) 955-8500
                                         *Counsel for Appellee Company Doe*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 13,590 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


Dated: April 22, 2013                              Respectfully submitted,

                                          s/ Baruch A. Fellner
                                         Baruch A. Fellner
                                             *Counsel of Record*
                                         Thomas M. Johnson, Jr.
                                         Amanda C. Machin
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Ave., N.W.
                                         Washington, D.C. 20036
                                         (202) 955-8500
                                          *Counsel for Appellee Company Doe*

57

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April, 2013, I electronically filed the foregoing Page-Proof Response Brief for Appellee with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system.  Service was accomplished on the following persons by the appellate CM/ECF system:

> Scott Michelman
> Allison M. Zieve
> PUBLIC CITIZEN LITIGATION GROUP
> 1600 20th St., N.W.
> Washington, D.C.  20009
> (202) 588-1000
>
> *Counsel for Parties-in-Interest-Appellants*

s/ Baruch A. Fellner
Baruch A. Fellner

## ADDENDUM OF RULES, STATUTES, AND REGULATIONS

### *D. Md. Loc. R. 105(11)*

Any motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection. The Court will not rule upon the motion until at least fourteen (14) days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials. Upon termination of the action, sealed materials will be disposed of in accordance with L.R. 113.

### *15 U.S.C. § 2055a (relevant excerpts)*

. . .

(b) Content and organization

  (1) Contents

Except as provided in subsection (c)(4), the database shall include the following:

  (A) Reports of harm relating to the use of consumer products, and other products or substances regulated by the Commission, that are received by the Commission from--

    (i) consumers;

    (ii) local, State, or Federal government agencies;

    (iii) health care professionals;

59

  (iv) child service providers; and

  (v) public safety entities.

(B) Information derived by the Commission from notice under section 2064(c) of this title or any notice to the public relating to a voluntary corrective action taken by a manufacturer, in consultation with the Commission, of which action the Commission has notified the public.

(C) The comments received by the Commission under subsection (c)(2)(A) to the extent requested under subsection (c)(2)(B).

(2) Submission of information

In implementing the database, the Commission shall establish the following:

(A) Electronic, telephonic, and paper-based means of submitting, for inclusion in the database, reports described in paragraph (1)(A) of this subsection.

(B) A requirement that any report described in paragraph (1)(A) submitted for inclusion in such database include, at a minimum--

  (i) a description of the consumer product (or other product or substance regulated by the Commission) concerned;

  (ii) identification of the manufacturer or private labeler of the consumer product (or other product or substance regulated by the Commission);

  (iii) a description of the harm relating to the use of the consumer product (or other product or substance regulated by the Commission);

  (iv) contact information for the person submitting the report; and

(v) a verification by the person submitting the information that the information submitted is true and accurate to the best of the person's knowledge and that the person consents that such information be included in the database.

. . . .

(c) Procedural requirements

(1) Transmission of reports to manufacturers and private labelers

Not later than 5 business days after the Commission receives a report described in subsection (b)(1)(A) which includes the information required by subsection (b)(2)(B), the Commission shall to the extent practicable transmit the report, subject to subsection (b)(6), to the manufacturer or private labeler identified in the report.

(2) Opportunity to comment

(A) In general

If the Commission transmits a report under paragraph (1) to a manufacturer or private labeler, the Commission shall provide such manufacturer or private labeler an opportunity to submit comments to the Commission on the information contained in such report.

(B) Request for inclusion in database

A manufacturer or private labeler may request the Commission to include its comments in the database.

(C) Confidential matter

(i) In general

If the Commission transmits a report received under paragraph (1) to a manufacturer or private labeler, the manufacturer or private labeler may review the report for confidential information and request that portions of the report identified as confidential be so designated.

(ii) Redaction

If the Commission determines that the designated information contains, or relates to, a trade secret or other matter referred to in section 1905 of Title 18, or that is subject to section 552(b)(4) of Title 5, the Commission shall redact the designated information in the report before it is placed in the database.

(iii) Review

If the Commission determines that the designated information is not confidential under clause (ii), the Commission shall notify the manufacturer or private labeler and include the information in the database. The manufacturer or private labeler may bring an action in the district court of the United States in the district in which the complainant resides, or has its principal place of business, or in the United States District Court for the District of Columbia, to seek removal of the information from the database.

(3) Publication of reports and comments

(A) Reports

Except as provided in paragraph (4)(A) or paragraph (5), if the Commission receives a report described in subsection (b)(1)(A), the Commission shall make the report available in the database not later than the 10th business day after the date on which the Commission transmits the report under paragraph (1) of this subsection.

62

(B) Comments

Except as provided in paragraph (4)(A), if the Commission receives a comment under paragraph (2)(A) with respect to a report described in subsection (b)(1)(A) and a request with respect to such comment under paragraph (2)(B) of this subsection, the Commission shall make such comment available in the database at the same time as such report or as soon as practicable thereafter.

(4) Inaccurate information

(A) Inaccurate information in reports and comments received

If, prior to making a report described in subsection (b)(1)(A) or a comment described in paragraph (2) of this subsection available in the database, the Commission receives notice that the information in such report or comment is materially inaccurate, the Commission shall stay the publication of the report on the database as required under paragraph (3) for a period of no more than 5 additional days. If the Commission determines that the information in such report or comment is materially inaccurate, the Commission shall--

(i) decline to add the materially inaccurate information to the database;

(ii) correct the materially inaccurate information in the report or comment and add the report or comment to the database; or

(iii) add information to correct inaccurate information in the database.

(B) Inaccurate information in database

If the Commission determines, after investigation, that information previously made available in the database is materially inaccurate or duplicative of information in the database, the Commission shall, not later than 7 business

63

days after such determination--

    (i) remove such information from the database;

    (ii) correct such information; or

    (iii) add information to correct inaccurate information in the database.

. . .

**16 C.F.R. 1102.26 (relevant excerpts)**

(a) For purposes of this section, the following definitions apply:

    (1) Materially inaccurate information in a report of harm means information that is false or misleading, and which is so substantial and important as to affect a reasonable consumer's decision making about the product, including:

    (i) The identification of a consumer product;

    (ii) The identification of a manufacturer or private labeler;

    (iii) The harm or risk of harm related to use of the consumer product; or

    (iv) The date, or approximate date on which the incident occurred.

    (2) Materially inaccurate information in a manufacturer comment means information that is false or misleading, and which is so substantial and important as to affect a reasonable consumer's decision making about the product, including:

    (i) The description of the consumer product;

(ii) The identity of the firm or firms responsible for the importation, manufacture, distribution, sale, or holding for sale of a consumer product;

(iii) The harm or risk of harm related to the use of a consumer product;

(iv) The status of a Commission, manufacturer, or private labeler investigation;

(v) Whether the manufacturer or private labeler is engaging in a corrective action and whether such action has not been approved by the Commission; or

(vi) Whether the manufacturer has taken, or promised to take, any other action with regard to the product.

. . .